UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JASON HAWK, JOSEPH JONES, and TILTON WALKER, JR., | ) ) ) | |
| Plaintiffs, | ) ) | 10 C 5485 |
| v. | ) ) | Judge George M. Marovich |
| ALLIED WASTE TRANSPORTATION, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Jason Hawk ("Hawk"), Joseph Jones ("Jones") and Tilton Walker, Jr. ("Walker") filed against Allied Waste Transportation, Inc. ("Allied") a complaint alleging that Allied discriminated against them on the basis of their race in violation of 42 U.S.C. § 1981. The parties filed a stipulation to dismiss the claims of plaintiffs Hawk and Tilton. Defendant has filed a motion for summary judgment with respect to Jones's claims. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.    Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir.

2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

In this case, plaintiff failed to file a response to defendant's motion for summary judgment by the Court's deadline (which the Court had already extended once on plaintiff's motion).[1] Because plaintiff did not file a response and, therefore, did not controvert defendant's statement of facts with record citations, the Court deems defendant's facts admitted to the extent they are supported by the record. The Court has carefully reviewed defendant's statement of facts and has deemed admitted only those facts supported by evidence in the record. The following facts are undisputed.

Plaintiff Jones worked as a commercial driver for Allied from June 1999 until Allied terminated his employment on December 15, 2006. Allied provides waste collection, recycling and disposal services to commercial customers in Chicago. The terms and condition of the commercial drivers' employment with Allied are subject to a collective bargaining agreement. The collective bargaining agreement provides, among other things, that Allied may discharge employees only for just cause.

During the relevant time period, Allied maintained work and safety policies and procedures. As part of its work rules, Allied informed its employees that "[d]ishonesty regarding any aspect of your employment or Company business" and "[v]iolation of any Company policy, work rule or procedure" could result in the termination of employment. Allied's *Safety*

---

[1] After the defendant filed its reply in support of its motion (i.e., several weeks after plaintiff's response was due), plaintiff moved for an extension of time to file his response. Because the motion for extension of time was filed after the deadline for filing plaintiff's response had passed and because plaintiff did not establish excusable neglect, the Court denied the motion for extension of time. Fed.R.Civ.P. 6(b)(1)(B).

*Handbook* informed employees that Allied would "initiate disciplinary action up to and including immediate discharge for "[d]efrauding the Company in any manner," for "[d]ishonesty or falsification of any Company record or document," and/or for "falsify[ing] time records or time sheets." Allied also has rules governing cell phone use. Allied prohibits the use of personal cell phones in company trucks. Allied allows the use of company phones "for business related purposes when safe to do so and on a limited basis while driving." Allied prohibits, however, drivers from using cell phones "while backing, performing difficult maneuvers or container pickups."

A number of incidents that occurred over the course of Jones's employment with Allied are at issue in this case. For example, Allied issued Jones a written warning in August 1999 for causing a preventable accident. In August 2000, Allied issued Jones a written warning for failing to turn off a battery-disconnect switch. In September 2001, Allied issued Jones a written warning for striking an air conditioning unit (presumably with a truck, but that is not clear from the record). In April 2002, Allied issued a written warning, because Jones failed to attend a mandatory training session. Jones missed the mandatory training session again in April 2004. In October 2004, Allied issued Jones a written warning for another preventable accident.

At some point during 2004, Jones went on vacation. During his absence, a substitute driver drove his route. The substitute was able to finish Jones's route in less time than it normally took Jones.

In late 2004, Jones's truck route changed. At Allied, drivers are generally assigned to a particular route. To be assigned to a different route, a driver must bid on open routes, which are assigned by seniority. In late 2004, Supervisor David Meyer informed Jones that route 415, which Jones had driven during the entirety of his employment with Allied, was going to be

broken up and distributed to other drivers with routes in the area. This left Jones free to bid on another route. Jones bid on route 201, which he was given.

One thing about route 201 came as a surprise to Jones. Before he had bid on route 201, an Allied supervisor had told Jones that the truck assigned to route 201 was going to be replaced with a new truck, but that did not happen. Jones was disappointed, because he believed the truck assigned to route 201was unsafe to drive. In order for Jones to operate the clutch in the truck assigned to route 201, Jones needed to stand up. This action caused pain in Jones's knee. By about August 2005, Jones took a leave of absence due to knee pain. When he returned, he was given a different truck for route 201.

During Jones's time at Allied, his supervisors never made any derogatory comments or statements about race to him. Once, though, in 2005, Rodney Huguely ("Huguely") asked Jones whether he hurt himself playing basketball. Jones asked why Huguely thought he played basketball. Huguely responded, "Don't all you guys?"

In January 2006, Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Jones alleged that Allied discriminated against him on the basis of his race. Before he filed a charge of discrimination, Jones had not complained about discrimination to anyone at Allied, because he wanted the charge to be a surprise. In March or April of 2006, Jim Woods ("Woods") (who was, at the time, Allied's Commercial Department Manager), called Jones into his office. Woods told Jones, "Let's move forward past this discrimination." Woods asked Jones what he wanted and suggested a new route or a new truck. Jones replied that they needed to go backwards before they could go forward. Jones testified that Woods threatened to terminate his employment if Jones continued to pursue his EEOC charge.

Jones had attendance problems over the years. Allied issued Jones written warnings on multiple occasions (including August 2003, July 2004, October 2004, May 2005, and March 2006) for being late and/or absent. Jones suspected the last one–in March 2006–might have been in retaliation for his having filed a charge of discrimination. Jones filed a grievance with respect to the March 2006 violation. The grievance was sustained, because Allied had erred in its calculation of Jones's absences.

Jones was given a written warning again on August 4, 2006. This time, Allied issued a written warning to Jones for unsafe lifting.

During his time at Allied, Jones reported to various supervisors. During his last year with Allied, Jones reported to supervisors William Baker and Dave Heyboer ("Heyboer"). Heyboer is white. Jones believes he was harassed in that Heyboer "always tried to run [him] real hard." Jones does not know how Heyboer treated employees who were not black. Another way in which Jones believes he was harassed is that he was once sent to pick up trash in the parking lot while two white drivers were allowed to stay inside with "something nice and cushy to do."

Allied terminated Jones's employment on December 15, 2006, based on events that happened on December 14, 2006. On December 14, 2006, Jones was a witness for a former co-worker at the former co-worker's unemployment compensation hearing. That day, Jones began his shift at 4:00 a.m., and he left the Allied yard to begin his route at 4:30 a.m. At 8:00 a.m., Jones received a telephone call from the unemployment compensation referee, who swore-in Jones. The hearing lasted until 9:00 a.m. Jones finished his shift at 2:05 p.m. that afternoon.

Jones was not the only Allied employee on the call for the December 14, 2006 unemployment hearing. Mike McEnerney, Allied's Operations Manager, and John McGee, Allied's General Manager, were also on the call. On December 15, 2006, McEnerney reviewed Jones's daily operator log, on which Jones had stated that he had taken a break from 8:30 to 9:00

a.m. McEnerney, however, knew that the hearing had gone from 8:00 a.m. to 9:00 a.m. McEnerney and McGee decided that Jones's misconduct warranted discharge. Thus, Allied terminated Jones's employment for "[s]tealing company time and falsification of company documents."

Jones filed a grievance with respect to his discharge. At the grievance hearing, Jones stated that he had participated in the telephone hearing via bluetooth headset and that he had continued to work during the hearing. McEnerney, who attended the grievance hearing, pointed out to the grievance committee that the use of cell phones during work was also a violation of company policy. The grievance committee denied Jones's grievance. At his deposition in this lawsuit, Jones was unable to point to any other employee who engaged in similar conduct but was not discharged.

On August 30, 2010, Jones filed this suit. In Count II (the only count remaining), Jones alleges that defendant violated 42 U.S.C. § 1981 by subjecting him to terms and conditions of employment that were less favorable than those offered to employees who were not black. The alleged discrimination included disparate treatment, harassment and retaliation for Jones's having filed a charge of discrimination with the EEOC.

## II.    **Summary Judgment Standard**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an

element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III.  Discussion

#### A.  Statute of Limitations

Defendant argues that much of Jones's § 1981 claim is time-barred. Jones's § 1981 claims of harassment, retaliation and disparate treatment with respect to the terms and conditions of employment arise under § 1981(b), to which a four-year statute of limitations applies. *Jones v. RR Donnelley & Sons Co.*, 541 U.S. 369, 382-384 (2004).

An unlawful employment practice may be either a discrete discriminatory or retaliatory act or a hostile work environment claim. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 110. A discrete act is that which is actionable by itself. *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008). A "discrete retaliatory or discriminatory act 'occurred' on the day that it "happened." *National Passenger*, 536 U.S. at 110. Such discrete discriminatory acts, such as termination, failure to promote, denial of transfer, or refusal to hire, are "not actionable if time-barred, even when they are related to acts alleged in timely filed charges." *National Passenger RR v. Morgan*, 536 U.S. 101, 113 & 114 (2002). Hostile environment claims, however, are different. A statute of limitations does not preclude

> consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period ... for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period.

*Nat'l R.R. Passenger Corp.*, 536 U.S. at 105.

With the exception of Jones's December 15, 2006 discharge, every discrete act of which he complains occurred before August 30, 2006. Accordingly, those acts are time-barred by the four-year statute of limitations applicable to claims arising under §1981(b).

Allied, however, has failed to establish, as a matter of law, that Jones's race harassment claim is time-barred. According to Allied's statement of facts, Jones alleges that the following incidents add up to actionable harassment: (1) his route was broken up and redistributed in 2004; (2) in 2004, while Jones was on vacation, a substitute driver completed his usual route in less time than in took Jones; (3) in 2004, when Jones bid on and received route 201, he was forced to drive the truck assigned to that route, which truck was difficult to drive; (4) he was sent to pick up trash in the parking lot when white drivers were given something "cushy" to do indoors; and (5) Heyboer "always tried to run [him] real hard." Although the first three of these incidents occurred outside the statute of limitations, Allied has failed to put forth evidence of when the fourth and fifth incidents occurred and, therefore, has failed to establish that they occurred outside of the statute of limitations. Accordingly, Allied has failed to establish, as a matter of law, that Jones's harassment claim is time-barred.

### B. Jones's discharge claim

As explained above, the only discrete action Jones challenges that is not time-barred is his December 15, 2006 discharge. In his complaint, Jones alleges that he was discharged due to his race or in retaliation for his having filed a charge of discrimination in March 2006. The Court considers these claims in turn.

### 1. Jones's § 1981 disparate treatment claim

Section 1981 of Title 42 of the United States Code grants all persons "the same right in every State and Territory to make and enforce contracts" as "is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981(b) goes on to define the term "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Claims of race discrimination and retaliation under § 1981 are analyzed using the same substantive standards as apply to Title VII. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012).

A plaintiff may establish discrimination in violation of Title VII or § 1981 either by putting forth direct evidence of discrimination or by following the indirect method under *McDonnell Douglas Corp. v. Green.*, 411 U.S. 792, 802 (1973). Under the direct method, "the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). In this case, the Court sees no direct evidence that suggests Allied discharged Jones due to race.

The Court, then, turns to the indirect method of establishing discrimination. To make out a *prima facie* case of discrimination in the termination context, a plaintiff must establish that (1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he was discharged; and (4) the employer either filled the position with a person not in the plaintiff's protected class or similarly-situated individuals outside his protected class were treated more favorably. *Jennings v. Illinois Dep't of Corrections*, 496 F.3d 764, 767 (7th Cir. 2007); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-846 (7th Cir. 2007).

The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that he was "rejected under circumstances which give rise to an inference of unlawful discrimination" and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6.

If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 724 (7th Cir. 2005). "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724.

Here, Jones is unable to make out a *prima facie* case of disparate treatment, because there is no evidence in the record that a similarly-situated individual outside of his protected class engaged in similar conduct but was not discharged. Jones was unable to identify a similarly-situated individual at his deposition, and he did not file a response to the motion for summary judgment. Evidence of a similarly-situated individual is an essential element of the *prima facie* case, and, without it, defendant is entitled to judgment as a matter of law on a plaintiff's discrimination claim. *Kriescher v. Fox Hills Golf Resort & Conf. Ctr.*, 384 F.3d 912, 915 (7th Cir. 2004).

Even if Jones could make out a *prima facie* case of discrimination, Allied would still be entitled to summary judgment. Allied has articulated a legitimate, non-discriminatory reason for terminating Jones's employment, and there is no evidence that the reason is pretextual. Allied

has put forth evidence that Jones's employment was terminated for falsifying his time record. Thus, to defeat summary judgment, Jones would have to put forth sufficient evidence from which a reasonable jury could conclude that the proffered reason was a pretext for race discrimination. A pretext is a dishonest explanation, rather than an error. *See Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009). To show pretext, Jones "must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted). Here, there is no such evidence. To the contrary, the undisputed evidence is that the unemployment hearing officer swore in Jones for the hearing at 8:00 a.m. and that the hearing concluded at 9:00 a.m. These are facts that McEnerney and McGill (the decision makers) knew, because they, too, were on the call. It is also undisputed that Jones wrote on his daily operator log that he had taken a break from 8:30 to 9:00. McEnerney saw this log with his own eyes. To be sure, the record does contain evidence from which a fact-finder could conclude that McEnerney was *mistaken* in his conclusion that Jones had taken a break from 8:00 a.m. to 9:00 a.m. Specifically, Jones testified at his grievance hearing (after his termination) that he had, in fact, been working during the first half of the unemployment hearing but had stayed connected to the call via a bluetooth headset. Evidence that an employer made a mistake, however, is not evidence of pretext. The record is free of any evidence to suggest that McEnerney's and McGill's reason for discharging Jones was pretext for discrimination.

There are no issues of material fact, and Allied is entitled to judgment as a matter of law on Jones's claim that he was discharged due to his race.

### 2. Jones's § 1981 retaliation claim

Jones also claims that his December 15, 2006 discharge was in retaliation for his having filed a charge of discrimination with the EEOC in March 2006. Leon may support his retaliation claim using either the direct or indirect method of proof. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). To establish retaliation using the direct method, Leon must put forth evidence that he engaged in statutorily protected conduct, that he was subjected to an adverse employment action and a causal connection between the two. *Gates*, 513 F.3d at 686. Evidence of a causal link is evidence that the "protected conduct was a substantial or motivating factor in the employer's decision." *Gates*, 513 F.3d at 686. Alternatively, to make out a *prima facie* case of retaliation under the indirect method, Jones must demonstrate, "that after engaging in protected activity such as filing a charge, [he] was subjected to an adverse employment action even though [he] was performing [his] job satisfactorily, and no similarly situated employee who did not file a charge was subjected to the adverse employment action." *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. 2005).

Here, Jones cannot establish retaliation via the indirect method for the same reason he could not establish disparate treatment by the indirect method. Specifically, the record contains no evidence that Allied's reason for discharging Jones was pretextual.

Accordingly, the Court will consider Jones's retaliation claim under the direct method. It is undisputed that Jones engaged in protected conduct (he filed a charge of discrimination with the EEOC) and that he was subjected to an adverse employment action (he was discharged). The

question is whether there is enough evidence from which a reasonable jury could find a causal connection between the two. A plaintiff can show causation through either direct evidence (e.g. "'I'm firing you because you had the nerve to accuse me of [race] discrimination!'") or "'by presenting 'a convincing mosaic' of circumstantial evidence that would permit the same inference [of retaliation] without the employer's admission.'" *Milligan v. Board of Trustees of S. Ill. Univ.*, __ F.3d __, __ 2012 WL 2764971 at *9 (7th Cir. July 10, 2012) (internal citations omitted).

Here, the record contains two pieces of relevant circumstantial evidence, but they do not add up to a "convincing mosaic" that permits an inference of retaliation. The first piece of evidence is the timing: Jones was discharged nine months after he filed a charge of discrimination even though he had been given warnings for policy infractions for years. The second piece of evidence is Jones's testimony that in March or April of 2006, Jim Woods (Allied's Commercial Department Manager), called Jones into his office and threatened to terminate Jones's employment if he continued to pursue his EEOC charge. The reason this evidence is not evidence of causation is that it has no connection to the termination of Jones's employment. The record contains no evidence that Woods had any involvement in the decision to terminate Jones's employment. Rather, the undisputed evidence is that the decision to terminate Jones's employment was made by McEnerney and McGee, both of whom had witnessed Jones's infraction. The record does not contain evidence from which a reasonable jury could find a causal connection between Jones's charge of discrimination and the decision to terminate his employment.

Allied is entitled to judgment as a matter of law on Jones's retaliation claim.

### C. Jones's hostile environment claim

Finally, Jones claims that he was subjected to a hostile work environment. Allied is liable for creating a hostile work environment if Jones can show: "that [his] work environment was both objectively and subjectively offensive; (2) that the harassment was based on [his] race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). In considering whether the environment is hostile, a court is to consider the "totality of the circumstances[,]" including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). In addition, to "qualify as a hostile work environment, the conduct at issue must be severe or pervasive enough to cause psychological injury." *Ellis*, 650 F.3d at 647.

The incidents that, according to Jones, add up to actionable harassment are: (1) his route was broken up and redistributed in 2004; (2) in 2004, while Jones was on vacation, a substitute driver completed his usual route in less time than in took Jones; (3) in 2004, when Jones bid on and received route 201, he was forced to drive the truck assigned to that route, which truck was difficult to drive; (4) he was sent to pick up trash in the parking lot when white drivers were given something "cushy" to do indoors; and (5) Heyboer "always tried to run [him] real hard."

Considered in their totality, these events do not constitute a hostile environment based on Jones's race, particularly in light of Jones's admission that he was never subjected to derogatory comments or statements about race. In fact, only one of these incidents–when Jones was

required to pick up trash–has any connection to Jones's race. These incidents are neither severe nor pervasive and do not constitute actionable harassment as a matter of law.

The record reflects no issues of material fact, and Allied is entitled to judgment as a matter of law on Jones's harassment claim.

For all of the reasons outlined above, the Court grants defendant Allied summary judgment on Count II, the only count remaining in this case.

## IV. Conclusion

For the reasons set forth above, the Court grants Allied's motion for summary judgment and hereby grants Allied summary judgment on Count II. Case closed.

ENTER:

George M. Marovich
United States District Judge

DATED: August 28, 2012